Good morning, Your Honors. Charles Fleischman appearing for the appellant, Mr. Mekonjic. The central issue of this case is the interpretation of the judgment that Judge Fee signed and the interpretation given to it by the defendants. The interpretation, first of all, the defendants tell us that they didn't understand what the judgment meant until after the judgment was written and they wrote the judgment. It would be helpful to me for you to tell me exactly what's at stake here. Sometimes, in other words, what are you maintaining they could properly have done in terms of just actual money? The briefs are pretty vague about that it's supposed to be less than everything, but after you get by less than, they can't take everything that was paid in retirement benefits. What are you claiming they should have done? They should have calculated every month the amount of disability benefits, subtracted from that the amount of the offsets. Those offsets were the workers' comps, Social Security, and the pension benefits that were received in that month. Is the net conclusion of that that the real difference is the $67,000 they tried to get back or is there more money than that? There's more money involved. There's substantial amounts of money that are owed to the plaintiff. How much? It's in my briefs to the trial court. I don't believe I said it to this guy. I think it's around $70,000. Are there additional offsets that we haven't seen? I'm sorry, what? Are there additional offsets coming that we haven't seen? Well, he's still getting Social Security and he's still getting, if that's what you mean. The workers' comp, I think, is gone. You're saying the opposite. You're saying that if you did it your way, that is the monthly offset way, there would be some net amount of disability benefits due to your client, both retroactively and prospectively. Yes. And we don't know what that is, but some net amount. I could look it up. Because the briefs were very vague on that and I couldn't quite figure out what you were really fighting over. I could look it up. All right, well, later. Go ahead. Okay. Well, that's basically my case. Also, the way they... What do you have for us to come to your understanding of the way the plan should be administered? In other words, this monthly offset without any overage for each month. Why do I say that? Yeah. Point us to where in the plans, what in the plans have they violated? Okay. First of all, it should be done that way because that's the way they always did it. And I gave two examples in my opening brief. Are there examples of this retroactive sort of thing? I mean, this is sort of a sui generis problem, isn't it? I'm not understanding your question. Isn't this a sui generis problem, i.e., you were paid by a different plan, and the question is, and now we're retroactively trying to reorganize the world, right? Right, yes. Do you have an example of that? No. We're not deciding what should be paid each month. We're deciding what should be done when you're trying to put the world back together because it was all screwed up. Okay. Well, we know how they calculate regular benefits every month because they've done it twice, and I gave you both examples of that. The first time when they denied him, when they first agreed that he was entitled to disability benefits, they sent him $3,000 some odd dollars because it covered the period before he started getting Social Security. In other words, they didn't hold that $3,000 to be offset against future benefits. Also, when they've calculated that after the workers' comp offset has run out, he would then start getting $81 and some odd cents per month. That was based on every month just the way I said it, and I've showed it mathematically that it works out exactly that way. Do you think the plans have conceded that your way of doing so, of calculating these past benefits offset, is correct, but that they were following the judgment of the first judgment of the court? You'll have to ask them, but I think that's what they conceded. They never argued against it as far as I can remember. No, the disagreement seems to be whether the judge ordered that you pay everything back that you got, or whether the judge ordered that it be reconstructed as if the offsets had been done on a monthly basis. That's really what the dispute's over. I wish somebody had said that's what the dispute was over because it was pretty hard to walk through the briefs and figure out what we were really fighting about, but in the end that seems to be what we're fighting about. Yes. It's whether or not the judgment controlled or whether or not the historic practice and the language of the plans controls. No, is that it, or is it whether or not the judgment meant the historic practice to control? I think the judgment meant that they should follow their practice the way they always do it because the judgment said take all appropriate, or in some of his prior rulings, appropriate offsets, not all offsets are appropriate, and he sent it back to the plan for them to calculate it because they're the ones that do the calculation, and how is the plan supposed to do the calculation other than the way they normally do it? Well, is that your argument or is your argument that by referring to offset, he was referring to these monthly offsets and not just a reimbursement of the total amount? I have a third argument. If he wanted my client to pay back everything, it would have been an easy thing to do just to say that in the judgment. It would have been an easy thing to do just to do it himself, the numbers. I mean, he certainly did refer to offset, so it certainly is clear that Judge Feist contemplated that there would be some offsets made to kind of put everything back where it belonged, but it didn't appear that Judge Feist or anybody else at that period had any idea what those offsets were going to be. And how could they have calculated that? How could the judge have calculated that? So he says appropriate offsets, whatever's appropriate under the plan. Whatever you guys do, do it in this case. Right. Right. But the numbers were all known. Well, most of the numbers were known. Well, they may not have been known to the judge. I mean, it doesn't appear that anybody had really sort of done the number crunching and say, well, if we do it this way, this is the way it's going to come out. If we do it that way, this is the way it's going to come out. It might have been very helpful, you know, five years ago, four years ago, for the parties to have said, well, if we're going to do offsets, here's the way it needs to be done. Now, you made an argument in 2014 to Judge Feist that any offset should not exceed the amount of the monthly payment. You made an argument. Well, that's the same argument I'm making now, yes. Okay. Right. And you then asked for equitable relief. You said any set-offs should not be enforced and then asked that there should be equitable relief. Are you still asking for equity today? Well, I'm asking for anything that'll help my client. Okay. Well, okay. All right. Was that an alternative argument that said if you don't agree with us about the fact that this is limited to the monthly offsets, then you should not make us pay this retro $67,000 because only if they agree we can afford it. Okay. I think I understand. Is that what you meant? Well, what I meant was they were arguing for everything back. They had said numerous times that he's going to wind up worse off than he is than if he lost the case because we're going to get everything back. They knew that. I wanted to show Judge Feese that there's authority that they don't have to. The court doesn't have to make sure that they get everything back, that there are cases dealing. Let me phrase my question a little bit differently, and I may have a slightly different question from my colleagues. So let's assume that there was some discretion in Judge Feese's order about how the offsets were to be done, and that the plan calculated the offsets, took every offset that was available to them, took it in lump, and that we didn't think that that was an abuse of discretion. We think it's within the contemplation of Judge Feese's order and that it is not an abuse of discretion for the plan to do so. That's bad news for your client all the way around. At that point, are you asking this court for equitable relief? And if so, what are you asking? Yes, I'm asking that that be calculated on a monthly basis. Well, that would be a matter of law, and that would require either to find that the judgment contemplated that was the only way that it could be done or that it was an abuse of discretion for them to do so. Now, I've given you that both of those are not true. So if I think that the award as a matter of law is correct or must be sustained, what is the equitable argument that you want to make that they shouldn't do it anyway? That this man has been fighting this battle for 12 years to try to get this all straightened out, that he was forced to take the pension, early pension, just to be able to live and support his family, that now that he's won his case and proven them wrong, and it took him 10 years to do that, and that he shouldn't be in a position where he's worse off now than he was when he started. So what are your best cases for equity? I cited them all in the brief there. Isn't your best, the equity argument basically, treat us the way you treat everybody else under the plan? Yes. Basic fairness? Yes. Treat us just the way you treat everybody else? Yes. Can I also point out that the idea that he has received all of his, he's been put back in the position he would have been had they given him, that's not true. He's not getting his life insurance. He's not getting the premium he paid on his life insurance paid back to him. They never gave him credit for that at all. He had accident and disability and dismemberment insurance. That wasn't given to him. He's supposed to get that. He even got a letter from the company after he won his first case saying, you're going to get all the benefits of a person on disability, and then he got a letter, hey, your life insurance has been canceled for not paying the premium. Well, they were paying the premium all the time by deducting it from his pension, but now he's got no life insurance or anything. Unless there are any other questions, I'd like to reserve my time for rebuttal. May it please the Court, good morning. I'm Tim McDonald. I'm here for the Delta defendants. Let me abandon what my argument was going to be and get right to the question that was the prominent part of the argument, and that was about how you calculate it and the normal way of calculating it. Judge Feist, in the judgment, told the plan to do something other than what it does under the plan. So the idea of – What is the operative language? Is it the judgment? Sure. Yes, Your Honor, and it's – Not what he said along the way. Yes, Your Honor. All right. So let's look at the judgment. The operative language is in the judgment. It's our excerpt of Record 114 – Eliminate any offset for the receipt of benefits. But that seems to be after calculating it. Calculate it as an offset, then eliminate it, then pay it. And in the next paragraph, that the amount of the offset that is eliminated shall not be paid by the plaintiff. But first you have to calculate it, right? Then you eliminate it, meaning you don't offset it, but you pay it to the applicable trust. Yes. So, therefore, you do have to calculate the offset. And he seems to be talking about doing it in the usual way, i.e. he wants to look at it from September 23, 2004 forward. In other words, he wants to know what the amounts would have been had he been eligible for the plan and the usual offsets made. Then he says, but don't take the disability – the retirement offset. Take that offset and give it back to the retirement plan. It seems pretty clear. It is clear, Your Honor, and it's clear in our favor, if I can explain why. Why? Because he's using the term offset in the context of the plan and telling you to calculate how you – as if you were doing it in September 20, 2004 forward. Isn't that what he's saying? Because the terms of the plan require that 100 percent of the retirement plan benefits paid be offset. Right. So I agree with you completely that what Judge Feist is saying is any offset that's permitted under the plan must be eliminated. That's what's unusual. He's the only participant where that happens, okay? That's where he's fashioning – But he still wants to calculate it as if it was an offset. He says that. But, Your Honor, it's not about just calculating. It's about what happens with that offset. Right, and then you take that offset and pay it to the plan, but you don't take something that wouldn't be an offset. But, Your Honor, the offset under the plan is 100 percent of the retirement plan benefits. If you look at – Okay, but it's not 102 percent. That's what the argument's about. No. It's not 110 percent. You want 110 percent. No, Your Honor. We want every penny that was equal to the amount paid by the retirement plan. What he wants is, if you ballpark it, approximately – Well, let me ask you then. My understanding of what you meant by 100 percent is that it can get up to 100 percent of the disability benefit, but it can't get to 110 percent of the disability benefit in any given month. In any given month, if the offsets are more than the disability benefit, he doesn't have to pay you. It doesn't collect an overage. It does not collect an overage. But you're trying to do that. But, Your Honor, what we're trying to do is replicate the scenario if he'd never retired. If he'd never retired, you would never have that issue. So you would also never have over $146,000 in fees in his pocket. What the judge wants you to do is to replicate it as if he were getting the long-term disability benefits when he should have gotten them and treat the offsets – calculate the offsets, not treat them, but calculate them on that hypothetical. But, see, he treats them that way. If you look at the excerpts of record 183 to 187, he runs a monthly calculation taking the pension benefit out. That's exactly what Judge Feist told us not to do. Exactly what he told you to do. He didn't get any offset for the receipt of benefits under the Delta retirement plan. But what he's saying is don't eliminate the – he's saying eliminate the offset. What I'm saying is if you look at plaintiff's calculations on 183 to 187, he's putting it back in there. And that's exactly what Judge Feist told us not to do. But you were the one that caused the trouble by saying that he couldn't get long-term disability, forcing him to take early retirement. When he tried to rescind the early retirement, you said no. And he said that was wrong, that was error. We're trying to undo the wrong that you committed. And you're saying basically looking at that judgment in a way favorable to us, we're going to penalize him again. Your Honor, I appreciate the question that's not correct. First of all, all along the way, as even Mr. Marconich's attorney concedes, we pointed out if you follow a receipt, you may not want this remedy because the amount of money that he said in his complaint he would return, Your Honor. In his complaint he said, I will return the money I got. That's in the Fourth Amendment complaint, paragraph 29. That's where this case started. And it could well be. I mean, it's too bad that Judge Fee is retired at that point. But it could well be that that's exactly why this was written that way. It doesn't say. I mean, if he wanted to say what you said he should say, he could have said it. He could have said that he has to return all the money he got in retirement to the plan. He didn't say that. Thank you, Your Honor. And the reason why he didn't say that is because it has to be appropriate relief under 502A3. That would be a legal remedy. That would be taking damages from general assets, which is not permissible under 502A3. What you have to have under 502A3, and we cited these cases on page 41 of our brief, is you have to have a fund. And here the fund was created when Judge Fee – All right, but does the judgment say that he's supposed to be in the – First of all, what you're trying to do is to get the money back from him, so you're not really operating within the plan either. There's nothing in the plan that says you'll go get money for something else back from him. Your Honor, the whole point is that this was constructed to be consistent with Judge Fee's orders, which said you can't – Well, I know, but then you're abandoning your claim that the problem is that this isn't consistent with the statute or with the plan. So let's just go back and look at the order again. If I may, Your Honor, that's where I am. What Judge Fee is doing is something different than what the plan says, because the plan says you can't un-retire. So he's saying, all right, over here I'm going to give him a remedy that cancels out, reforms a provision in the plan. But if I do that, I also then, to be consistent, have to tell them ignore the pension offset. And so that's the language in that carryover paragraph, language the plaintiff did not object to before it went in with Judge Fee. Then Judge Fee says that amount of the offset, if you go down to the next paragraph, shall not – That's the part I don't – the amount of the offset, but not the amount of the benefits paid him under the retirement plan. Right, but the amount of the offset for the benefits paid is 100 percent, Your Honor. If you look at the plan, the plan at page, our excerpt of record 341, says that any amount you get from the retirement plan is to be offset. So what Judge Fee was doing – But only up to the amount of a monthly disability benefit. But, Your Honor, what you're doing there is you're taking two other benefits and giving them priority. That's not what Judge Fee said, because he was not only overpaid because the retirement benefit was more. He ended up in that situation because he had three benefits that total put him up over the top. The retirement benefits were never as much as the disability benefit. They were about half as much. But – So? So you remove the entire offset consistent with the terms of the plan. I'm not getting the fact that this is the offset. That's the problem. You're calling an offset the amount that a complete repayment rather than what would have been offset on a monthly basis. Right, and that's because Judge Fee's judgment does not tell us to go back and roll things on a monthly basis. Instead, it says don't put anything in there about retirement benefits. But it also says the retirement plan is further ordered to rescind the plaintiff's retirement election and permit him at a future date to retire consistent with the terms of the Delta Retirement Plan, its administrative practices, and applicable law. Yes, so what that means is when he does retire, he can't be penalized again for, say, the whole 443 that he took before because a significant portion of that would have already been returned at this point. And so what the plan would have to do when he retired is say, what's left here? We have to give him credit for everything that got repaid. What Judge Fee's was doing here was simply following in the judgment what he had said in his orders. He was very careful in his orders. What Judge Konstant ordered here. Excuse me? What is your understanding of did Judge Konstant read this order, judgment, or did he do something else entirely? Judge Konstant not only read it, he rejected plaintiff's argument and their motion to reopen the first case after they failed to appeal. They then failed to appeal Judge Konstant's order that prohibited him from reopening the case. That's why that becomes preclusive at that point. He has lost the ability after failing to appeal both originally Judge Fee's order and then Judge Konstant's order in the old case because Judge Konstant took that case over. But that's only if you agree with your reading of the order. I mean, that doesn't make any sense. Your Honor, this isn't the order. This is Judge Konstant's order. I understand. Judge Konstant for some reason thought that he was trying to reopen the old case, but that's only what he is doing is trying to interpret the judgment in the old case. And then Judge Konstant rejected the argument to reopen. He filed a similar claim in this case, and Judge Konstant rejected his argument here and said no. When you look at his February order, February 2016 order, Judge Konstant says, I agree with defendants. They had to recalculate the whole retirement plan. So Judge Konstant agrees with our reading. Tell me wherever Judge Konstant said that. Excuse me? Where does Judge Konstant say that that's his understanding? In the February opinion, and I will get you the excerpt of record, prior to that motion being filed by plaintiff, I'm sorry, prior to that order, the plaintiff had argued that it should be relieved of the duty to repay it. Judge Konstant then comes along and says in his order, no, you've done everything correct except for the way that you've got to tweak Social Security. And so it's in his February 9, 2016 order. And if I may look here, Your Honor, in my table of contents, his February 9, 2016 order is on our plan excerpt of records starting at page 10. And so in that order, he does not require us to go back and recalculate the retirement benefits. He basically says you, being Judge Konstant, said you did everything right with the exception of, I want you to redo the Social Security aspect, and I want you to go back and consider whether or not he gets an extra six months to string out the payments. So Judge Konstant both rejected that and made it, recognizing that he was precluded under claim or issue preclusion, depending on how you want to define it, from litigating it after the first order. And then when he looks at it here, he says, I think the administrative committee read it exactly correct. So we've got a deferential standard of review here. This is an unusual case. But you don't have, I mean, you would agree, I take it, that there is no deferential standard of review with regard to how you read the judge's order. With respect to the legal issue of what the judge's order means, yes, Judge Konstant said, but then you have to apply that order to the terms of the plan, and there is potentially interpretation issues in the terms of the plan. The key there is where he says that this judgment is intended to place the plaintiff in the same position as if he had been deemed eligible for long-term disability coverage from the beginning, right? So if he had, you wouldn't have been able to take those offsets, or 102%. If he had been, remember the whole reason why that comes up is in theory he wouldn't have retired. So he would not have had $146,000 from the retirement plan. That's actually where Judge Feist picks up on that in his March 27, 2014 order, and that's quoting his January 2013 order. He's saying that, Judge Feist, in March of 2014, there's not supposed to be a double payment. This is a double payment. There's supposed to be appropriate offsets and return of the benefits. Eighteen days later, he enters this judgment. The plaintiff wants to come along and come up with their own reading of the judgment. Settled Ninth Circuit law says if there's any question, go back and look at the judge's orders. Judge Feist was consistent all the way through the case, and the reason why he was consistent was it started with the plaintiff saying, I'll pay it all back. Paragraph 29 of the complaint, I'll pay it all back. And if you need to, take some out of my DNS benefits. Counsel, let me give you the same question that I asked opposing counsel. So let's suppose that I thought that Judge Cronstadt had construed the order, Judge Feist's order, correctly, and that the committee understood the order correctly, and that the committee did not abuse its discretion in the way in which it calculated everything. At that point, counsel says, yeah, well, in that case, I need an equitable remedy. And there's some cases in support for that. You've got some cases out of Virginia and a couple of other places, but the Phillips case out of Virginia is, I think, one of the preeminent ones, which you sort of gave the back of the hand to in a footnote in your brief. So why shouldn't we consider equity and why shouldn't we remand this back? Thank you for raising that. That's a great question. That was precluded because that was. . . It's interesting you never say that to a judge. Of course, they're good questions. No, but the reason why that one's a great question is because it got me right to where I needed to go. So it's from an advocate's point of view, I couldn't have had a better segue, so I appreciate it. He argued those cases to Judge Feist. Judge Feist says, no, you have to. . . At that point, we didn't have any calculations. I mean, we didn't know what was going to happen at that point. But, Your Honor, we had. . . that's incorrect. We had raised our hands, and I can give you the site in the record where we did it repeatedly and said, hey, if you do this, he's going to owe money. This could be an explanation for why Judge Feist wrote the judgment the way he did. Because. . . i.e. to cut off the offset at the amount of the long-term disability benefits. No, because the plaintiff said, I want to un-retire. And Judge Feist said, okay, if you want to un-retire, you can un-retire. And the way that you un-retire is to return all of the payments. But he didn't say that. You see, that's the problem. You're saying he said that, but it's not what he said. But, Your Honor, he didn't say. . . He said eliminate any offset. Right. That offset is term of order under this plan, isn't it? I agree with you. And the offset in plan excerpt record 341, section 7.01c of the DNS plan says 100% of the retirement plan benefit is to be offset. 100%. There's no argument anywhere that it's less than 100%. How about the non-alienation of benefits provision? The non-alienation of benefits provision begins with except as required by law. And Judge Feist's order is. . . Go back to where you just were. Yes, it says you offset 100%, but never to more than the monthly long-term disability benefit, right? Also, the other argument is. . . What do you mean? There isn't anything in the plan that says that. The reason why that happens is if you do things on a rolling basis in real time like that. . . Right. He was telling you to do that on a rolling basis, it seems to me. No, there's nothing in here about recalculating on a monthly basis. The first thing he does. . . Well, it says to go back as if this was September 2004. And what he says is take it out. Take that benefit out. Let me ask you a different question. And this is somewhat related to Judge Bybee's equity question. If you had done it in the other. . . One of the plaintiff's claims is that you should have done the offsets in the other order. That is, if you had offset the railroad retirement first. . . Then there wouldn't have been a net amount to pay back. And the Social Security and workers' comp would have cut off. . . Because you're not arguing that those two don't cut off at whatever the long-term disability benefit is, right? Those two are whatever they are. They never over. . . They never go over. They never go over, correct. Right. But remember. . . An offset under this plan never goes over. That's what's so odd about what you're doing. I'm sorry, say that again. No offset that you actually do under the plan ever results in a net amount. Once you follow the judge's order and say, eliminate any offset for the receipt of retirement plan benefits, you're correct. That never goes over. But it's because he tells us, take it out of the equation. Let me try to go back to the. . . But the it is. If the it is the same as what would have been the offset, then it cuts off at 100%. No, Your Honor, because the offset is the. . . All right, but I'm asking a different question now. Okay. All right, I'm asking whether at least as a matter of equity, it should have been considered whether to do the calculation in the other order. Okay. And if I may, Your Honor, to get back also to Judge Bivey's question because I can answer them together. First of all, that was raised in the first case. It's precluded. Judge Feist could have said that in his order. He never said that in his order. He never said that in the. . . Right, and the appropriate offset. So if as a matter of equity, the appropriate offset so he doesn't end up with a net amount is just to switch the order conceptually as a calculation matter. Why not? No, appropriate is a word in the text of the statute. Couldn't it also have been the case that Judge Feist would have been willing to consider a motion in equity after the calculations were made? If I can, Your Honor. Let me get right to the point. I don't see anything in Judge Feist's order or his opinions that says, and there's not going to be an equitable solution here. He already did that because what he did was allow him to un-retire, and the un-retirement was what he said was the A3 relief. A3, Your Honor, is the, Judge Berzon, is where the appropriate language comes from. It's in that statute. And so what he's doing is saying, if I just give him back the long-term disability benefits under ERISA's 502A1B, then I don't give this guy what he wants. He's asking me to un-retire. Well, to un-retire, I have to go to the retirement plan and cross out a term that says you can't un-retire. But what I'm also going to do, because it's equity, and under the Supreme Court's decision in U.S. Airways v. McCullough, I can't just start giving out legal remedies. I have to do an equitable remedy. The equitable remedy here is that the money goes back to the plan, the retirement plan, because he says he wants to un-retire. So he said, go back to square one and un-retire. Well, he could have said that, but the judgment doesn't read that way. The judgment says eliminate the recalculation of – my red light is on. May I answer, Your Honor? Yes, please. Thank you. The judgment says the recalculation of offsets should eliminate the retirement plan benefits. So he puts it to the side. And then he says, not just that it has to go to the retirement plan to make the retirement plan whole, but he says, shall not be paid to plaintiff. When you calculate it the way he wants to, and if you look at the – I really would encourage you to look at the excerpt of record of ours, 183 to 187. Just as Judge Feist says recalculation should eliminate any offset, that's the first thing he puts in there. It's directly contrary to the order. Your Honor, I appreciate your time today. I have run over. We pointed out that this might not be the remedy that he wanted. He pled in the complaint that he would return all of the funds. That's how Judge Feist tried the case. Judge Feist never said he returns less than all. We request that Judge Kronstadt's decision, both with respect to the discretion from the plan and with respect to the legal issue of whether or not the matter could be recalculated – I'm sorry, whether the matter could be raised in this case or was precluded by the prior case be affirmed. Thank you very much. Sir, you have a significant amount of time left, as I recall. I'm sorry? Sir, Your Honor, I didn't hear you. I said you have a significant amount of time left.  It's unusual. Yes. First of all – Now, you did say this in your complaint that you would return all the money. Yes, in the complaint. But if you take – the disability benefits per month are higher than the retirement benefits per month that he was receiving. So if you pay him back, if you give him all the disability benefits, and then for every month – and you calculate month by month – for every month that he received disability benefits, he received lower pension benefits. Every month that he was supposed to receive disability benefits, he received a lower amount of pension benefits. So there's enough money to pay off the pension plan 100%. And then you calculate with the rest of his benefits how much can you take off for the Social Security and the workers' compensation. So the pension plan can get repaid right away. And when I saw that judgment – that judgment, by the way, was written by counsel. And if he was telling us all along, and he thought Judge Fies believed all along that Plaintiff has to give back every penny he got, he should have written that into the judgment. And then Judge Fies – And he could have given back every penny he got if the calculations were done in a different fashion. Right. Every penny he got from the pension plan. Right. Yes. Yes, if they had calculated that first. And if you read the judgment, it says take that – it looks like – I interpreted that to mean take that, put it aside, do that first. And then take all that money, give it to the pension plan, and then calculate the rest of the offsets. Did you have a – did you go back and look at the amount of money we're talking about here? Oh, no. I'm sorry. I didn't. But it's – I think it's $70,000 or $80,000. It's a significant amount of money. But you're saying then two different things. You're saying there were two things that would have been appropriate. What they did was not appropriate, but there were two other things they could have done that would have been appropriate. One would have been what you were just talking about, that is, to pay back all of the retirement plan money and then go to the other offsets. The other would have been to take the retirement benefit as a monthly offset and therefore cut it off at 100% of the LTD. That's not the same thing as I understand it. It is the same thing because – and the other one doesn't. Well, I'm suggesting they could have sent it all back to the retirement plan. Yes. You're making two different suggestions. One would get all the money back to the retirement plan immediately, and the other one would not. How would it not? Because if you're reconstructing the world back to a monthly benefit as if he were – the retirement benefits were being paid him all along, then what you're doing is you're cutting off the reimbursement every month to less than the 100% of the retirement for that month because when you add in the Social Security and the workers' comp and so on, it's going over 100%, and you're saying, well, just stop at that point. Stop at that point. So therefore, for that month, they're not going to get 100%. They're going to get 100% of the pension back. No, they're not. Yes, they are. Only if you do the pension first, but you could also do it without doing the pension first and just cut it off because – Yes, but whether the pension gets back its money or not, I really didn't care. I mean, it was – Well, I understand that, but there are two different conceptual versions, and I suppose that's okay if you say either one would be appropriate, but the one they chose wasn't appropriate. But they're quite different because one gets all the money back to the plan and the other one doesn't. Well, I'm not sure how the other one doesn't. The monthly – well, if you calculate the Social Security and workers' comp offsets first, yeah. Then, well, that's up to them. If they want to get all the money back, there's a way to do it, you know. Let me just say also, Judge Woodcock brought up the way the paying back the money would go, where since he didn't have enough money to cover 100% of all the offsets, they were going to take future benefits from his disability benefits. First of all, this judgment is – well, I didn't think it was ambiguous, but it's obviously ambiguous. We're all sitting here talking about what it means. If it's ambiguous, why interpret it to be contrary to the law? Why interpret it to mean that – I lost my thought here. Why say that the disability plan can transfer money to the pension plan when the disability plan says it cannot – those monies cannot be used to pay his debts? That's a violation of the disability plan. Also – You're talking here about the non-alienation of benefits? Right. Also, Siboroff says that you can't collect for a legal debt under ERISA. A plan can't do that. So why do that? Their contention, as I understand it, is they're doing you a favor because – Yes, they're always doing you a favor, yes. No, because the alternative would be to say, pay me the money now. Oh, yes, yes, yes, yes. Pay me the money now. Well, that's a legal remedy, too. I mean, you know, that you owe us so much money, we don't have to sue you. Pay us the money now. If they had sued, they'd have to – they would be suing for a legal remedy. They can't do that. But – so why interpret it to be against the law? Thank you. Mr. Fleischman? Yeah. The amount of money at stake here, about $65,000 and change, by ordinary litigation standards in federal district courts, not very much. Yes. Have the parties considered mediation? I'm sorry? Have the parties considered mediation? We've been through all that. There's no hope of mediation in this matter. It's not a lot to a lot of people, but it's an awful lot to my client, who's sitting there now for the last two years without anything. Also, my understanding is you're saying it's not $65,000, it's $65,000 plus more. It's considerably more, yes. But you haven't given us a figure. I gave it to the – Maybe it's $150,000. Huh? Maybe it's $150,000. Maybe. It's some $65,000 plus what else? The insurance? Plus, well, some months he had – well, no, I didn't even count in the insurance. Some months the offsets were less than 100 percent. I mean, total less than 100 percent. So there were months when he should have gotten money, if you follow my – Is there also a fees issue? I don't know whether you're in charge of fees for this case or not. Yeah, there is. Depending on how this appeal comes out, there will be a fees issue. Okay. There is a fees-shifting statute here. Oh, yes. Do you think ERISA would apply to this? Because this is really sort of a contract action. Well, you can litigate that. Well, it's litigation for benefits. He's trying to straighten out – actually, I think it's one continuous litigation from day one in 2000 – what was it, 12? To now. One thing I don't understand is why you didn't appeal Judge Konstant's refusal to clarify the original judgment. I liked the judgment. There was nothing – I didn't see that there was anything – I thought they were – No, but I thought you went back to him after they calculated, tried to reopen the old case, and he said no because he thought you were trying to relitigate something. Yeah, well, I wasn't. In fact, I was surprised they objected to my going back to reopen the case because I thought that was implied in the judgment, that it was an initial decision, an initial calculation. I think Judge Fees at that time used the words. And obviously there had to be some judicial oversight involved. We're now over your time. Okay, thank you. Your argument is sort of a Jarvis versus Jarvis case, so it would be nice if it were over. So McConish versus Delta Family Care is submitted. Thank you.
judges: Berzon, Bybee, Woodcock